UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DEANDRE MORROW,

                           Plaintiff,

v.

CLARK COUNTY POLICE
DEPARTMENT; OFFICER
THOMPOSON, ID #606,

                           Defendants.

Case No. 2:20-cv-02264-ART-EJY

ORDER

*Pro se* Plaintiff Deandre Morrow brings this 42 U.S.C. § 1983 action against Defendant Officer Thompson for alleged violations of Plaintiff's First and Fourteenth Amendment rights. (ECF No. 11.) The Court previously dismissed all other claims against other Defendants. (ECF Nos. 14, 15.) Now pending before the Court is Defendant Thompson's Motion for Summary Judgment on Plaintiff's First and Fourteenth Amendment claims. (ECF No. 33.) For the reasons stated, the Court grants Defendant's Motion.

## I.   BACKGROUND

The facts relevant to Defendant's Motion for Summary Judgment are taken from Plaintiff's Second Amended Complaint (ECF No. 11) and from exhibits submitted by both parties with their briefing on this Motion.

On the date of the incident, Plaintiff dropped his children off at school around 8:50 a.m. (ECF No. 34-1 at 7.) After dropping off his children, Plaintiff began driving home on Gilmore Avenue. (*Id.* at 7, 28, 29.)

Around 9:02 a.m., Officer Thompson witnessed Plaintiff do a U-turn in an active school zone and initiated a traffic stop. (*Id.* at 60.) Plaintiff turned left onto El Capitan Way and stopped his vehicle. (*Id.* at 8.)

The parties have different accounts of what happened next. According to Officer Thompson, he approached Plaintiff's vehicle with his thumb and index finger resting over the gun in his holster, as he was taught in safety training for

traffic stops at the academy. (*Id.* at 60.) According to Plaintiff, Officer Thompson did not place his hand over his gun until he felt threatened and called for backup because Plaintiff began arguing with him about the traffic infraction. (ECF No. 38 at 1.)

The interaction between the parties began with Officer Thompson telling Plaintiff that the reason for the stop was Plaintiff doing an illegal U-turn in a school zone. (ECF No. 34-1, Ex. B-2 at 00:43-00:50.) Plaintiff then told Officer Thompson that another driver made a left turn over double lines to turn into the school. (*Id.* at 00:51-01:29.) Plaintiff questioned Officer Thompson's understanding of traffic laws. (*Id.* at 00:54-1:04.)

During the argument, Officer Thompson called over his radio for another unit. (*Id.* at 1:05-1:08.) This is the point where Plaintiff says that Officer Thompson placed his hand on his gun. (ECF No. 38 at 1.)

Officer Thompson then asked for Plaintiff's license and registration and returned to his police vehicle to run Plaintiff's information. (ECF No. 34-1, Ex. B-2 at 1:28-02:22.) While Officer Thompson was running Plaintiff's information, Officer Christopher Chin ("Officer Chin") arrived on the scene, approximately six minutes after the traffic stop began. (*Id.* at 06:05.)

Officer Chin spoke to Plaintiff through the passenger side window and asked if Plaintiff was driving fast or if he made a U-turn, to which Plaintiff responded that he thought he made a U-turn. (ECF No. 34-1, Ex. B-3 at 00:59-01:05.) Plaintiff contends that this response was forced because he was afraid to disagree with Officer Thompson's version of events after Officer Thompson placed his hand on his weapon. (ECF No. 38 at 1; ECF No. 34-1 at 13.) Plaintiff did not say anything to Officer Chin about the stop being racially motivated. (ECF No. 34-1, Ex. B-3; ECF No. 34-1 at 12-13.)

Around 9:13 a.m., Officer Thompson was informed that Plaintiff's license was revoked. (ECF No. 34-1, Ex. B-2 at 11:17-11:28.) This turned out to be a

mistake; dispatch mixed up Plaintiff's commercial driver's license, which was expired on the date of the incident, with his regular driver's license, which was not expired on the date of the incident. (ECF No. 34-1 at 15-17, 26.) The entire citation was ultimately voided due to the mistake. (*Id.* at 25-27.)

Officer Thompson returned to the Plaintiff's vehicle and told him that his license was revoked and asked if there was anyone that could pick the car up because Plaintiff could not drive it without a valid license. (ECF No. 34-1, Ex. B-2 at 15:02-15:24.) Plaintiff said that he would call the registered owner of the vehicle to pick it up. (*Id.* at 15:24-15:29.) Officer Thompson then explained that Plaintiff was getting a citation for a revoked driver's license and for an illegal U-turn before returning Plaintiff's information and handing him the citation. (*Id.* at 15:29-15:42.) Officer Thompson told Plaintiff to wait outside the vehicle for the registered owner to arrive. (*Id.* at 15:50-15:56.) Officer Thompson did not impound the vehicle Plaintiff was driving because a licensed driver could move it. (ECF No. 34-1 at 78.)

 Around 9:18 a.m., Officer Thompson returned to his vehicle. (ECF No. 34-1, Ex. B-2 at 16:02-16:07.) Officer Chin also returned to his vehicle at this time. (ECF No. 34-1, Ex. B-3 at 10:30-10:32.) In Officer Chin's bodycam, a third officer is visible standing behind Officer Thompson's vehicle. (*Id.*) At this point, both Officer Thompson and Officer Chin's bodycams stop recording. According to them, after the traffic stop concluded, they spoke with Sergeant Valdez, the third officer, for about five minutes about the traffic stop and other issues before leaving the area. (ECF No. 34-1 at 60, 84.) Both officers claim they did not speak to Plaintiff again after issuing the citation. (*Id.* at 60, 67, 68, 84.) GPS tracking data shows that Officer Thompson and Officer Chin left the area around 9:23 a.m., five minutes after issuing the citation. (*Id.* at 51-56.)

Plaintiff's version of events after the citation was issued is different. Plaintiff says that after Officer Thompson issued the citation, Officer Chin left

the scene, but Officer Thompson returned to Plaintiff's car where Plaintiff accused Officer Thompson of pulling him over because he was black. (ECF No. 34-1 at 48-50.) Plaintiff says Officer Thompson got angry and told him to get out of the car and stand on the curb. (*Id.*) According to Plaintiff, Officer Thompson then sat in his vehicle and watched him until the registered owner of the vehicle arrived to make sure that he did not drive off. (*Id.*) Plaintiff also claims that testimony from the registered owner of the vehicle, Valerie Montoya, corroborates his version of events and confirms that Officer Thompson was at the scene of the incident watching Plaintiff when Ms. Montoya arrived. (ECF No. 38 at 3.) Ms. Montoya testified that she arrived at the scene about twenty-five minutes after Plaintiff called her. (ECF No. 39 at 15-16.) This puts her estimated time of arrival well after the GPS tracking data says that Officer Thompson left. (ECF No. 34-1 at 51-56.)

Following these events, Plaintiff filed suit under 42 U.S.C. § 1983 against Officer Thompson and other Defendants. The operative complaint is Plaintiff's Second Amended Complaint. (ECF No. 11.) The Court dismissed all of Plaintiff's claims except for his claims under the First and Fourteenth Amendment against Officer Thompson. (ECF Nos. 14, 15.)

Defendant moved for summary judgment on Plaintiff's surviving claims. (ECF No. 7633.) Plaintiff responded (ECF No. 38), and Defendant replied (ECF No. 39).

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). The Court views the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**III.   DISCUSSION**

Plaintiff's claims against Officer Thompson rely on the First and Fourteenth Amendment. In his First Amendment claim, Plaintiff argues that Officer Thompson retaliated against him for engaging in constitutionally protected speech related to allegations of racial profiling. In his Fourteenth Amendment claim, Plaintiff argues that Officer Thompson engaged in selective enforcement of traffic laws and targeted Plaintiff because of his race.

Officer Thompson argues that he is entitled to qualified immunity on Plaintiff's claims. Qualified immunity shields certain government officials from liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The United States Supreme Court has mandated a "two-step sequence" for resolving qualified immunity claims. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "First, a court must decide whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right.

Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* (citations and internal quotation marks omitted).

Using this two-step framework, the Court will address each of Plaintiff's claims in turn.

**A. Plaintiff's First Amendment Claim**

To show a violation of a constitutional right based on a First Amendment retaliation theory, a plaintiff must show: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (holding that the plaintiff stated a claim for First Amendment retaliation through the actions of social workers employed by a county Health and Human Services Agency). The mere threat of harm can be an adverse action. *Brodheim v. Cry*, 584 F.3d 1262, 1269–70 (9th Cir. 2009) (collecting cases).

Plaintiff points to a variety of actions Officer Thompson allegedly took in retaliation for statements Plaintiff made that were critical of Officer Thompson's policing and that alleged racial profiling. Plaintiff argues that Officer Thompson's threatening placement of his hand on his gun, the issuance of the citation itself, and the decision to watch Plaintiff while Plaintiff stood outside his car and waited for the registered owner to arrive were all impermissible retaliatory actions.

To survive summary judgment, Plaintiff must first show that his statements are constitutionally protected speech. "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at

police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). "The freedom of individuals to oppose or challenge police action verbally without thereby risking arrest is one important characteristic by which we distinguish ourselves from a police state." *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990).

Here, viewing the evidence in the light most favorable to Plaintiff, there are two instances where Plaintiff engaged in protected speech. The first is captured on Officer Thompson's bodycam footage when Plaintiff questioned Officer Thompson's understanding of traffic laws and asked Officer Thompson if he saw others violating traffic laws. This sort of verbal challenge to police action is protected by the First Amendment from retaliatory action by police.

The second allegedly took place after the bodycams stopped recording. Five minutes of time, beginning when the bodycam footage cuts off and ending when the GPS tracking data shows that all officers left the area, are unaccounted for. Officers Thompson and Chin provided sworn declarations stating they had no further interaction with Plaintiff after Officer Thompson issued the citation. Plaintiff testified that after the citation was issued, he had an additional conversation with Officer Thompson where he raised issues of racial profiling. Plaintiff says that Officer Thompson got angry, told Plaintiff to get out of his vehicle, and then watched Plaintiff to make sure he did not drive off. The conflicting testimony creates a triable issue of fact as to what happened during the five minutes between the end of the bodycam footage and the officers leaving the area. Plaintiff's version of events, if true, shows that he engaged in constitutionally protected speech.

The second element of Plaintiff's claim requires him to show Officer Thompson's actions would "chill a person of ordinary firmness" from continuing to exercise their First Amendment rights. *Capp*, 940 F.3d at 1053. The Ninth Circuit has held that a retaliatory arrest, a retaliatory search and

seizure, and informal measures such as an investigation can chill First Amendment activities. *Ford v. City of Yakima*, 706 F.3d 1188, 1193–94 (9th Cir. 2013), *abrogated on other grounds by Nieves v. Bartlett*, 587 U.S. 391 (2019). The citation and the alleged seizure following the citation both satisfy the second element of Plaintiff's claim. As outlined above, the Court find triable issues of fact on whether the alleged seizure following the issuance of the citation took place.

The allegation that Officer Thompson placed his hand on his gun after Plaintiff was critical of his policing also satisfies the second element. A rational jury could find that a person of ordinary firmness would be chilled from engaging in future protected speech by such a show of force from a police officer. The conflicting testimony from Plaintiff and Officer Thompson about when Officer Thompson placed his hand on his gun creates a triable issue on whether Officer Thompson placed his hand on his gun in retaliation for Plaintiff's statements about his policing. Plaintiff has therefore satisfied the second element of his claim.

Finally, Plaintiff must show "there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (quoting *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010)). "[P]laintiffs bringing 'First Amendment retaliatory arrest claims' must generally 'plead and prove the absence of probable cause,' because the presence of probable cause generally 'speaks to the objective reasonableness of an arrest' and suggests that the 'officer's animus' is not what caused the arrest." *Ballentine*, 28 F.4th at 62 (quoting *Nieves*, 587 U.S. at 401–02).[1] While Plaintiff was not arrested here, the

---

[1] In *Nieves*, the United States Supreme Court identified an exception to its requirement for plaintiffs to plead and prove the absence of probable cause in retaliatory arrest claims. "[A] narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, 587 U.S. at 406. "[T]he no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the

1    citation and the alleged seizure following the citation both involve probable

2    cause, so the presence or absence of probable cause is probative in

3    determining if Officer Thompson's animus caused the chilling actions.

4         Because Officer Thompson had probable cause supporting the traffic the

5    citation, it cannot be the basis for a First Amendment retaliation claim. No

6    party disputes that Plaintiff violated a traffic law when he did a U-turn in a

7    school zone. Thus, Officer Thompson's citation was objectively reasonable and

8    not caused by any undue animus for Plaintiff. Similarly, the alleged seizure

9    that took place after Officer Thompson issued the citation was also objectively

10   reasonable. At the time, Officer Thompson reasonably believed that Plaintiff

11   was not licensed to drive, so it would be unlawful for Officer Thompson to let

12   Plaintiff drive away. Even taking the events as alleged by Plaintiff, it was

13   objectively reasonable for Officer Thompson to take steps to prevent Plaintiff

14   from driving. Thus, the alleged seizure also cannot be the basis for a First

15   Amendment retaliation claim.

16        This leaves only Plaintiff's claim that Officer Thompson put his hand on

17   his gun in response to Plaintiff's statements questioning his policing. But the

18   objective evidence does not support Plaintiff's version of events. While it is

19   unclear from the video when Officer Thompson places his hand on his gun, the

20   conversation between the parties is civil and conversational. At no point in the

21   bodycam footage does Officer Thompson become audibly angry. He remains

22   calm throughout. The objective evidence, along with Officer Thompson's

23   declaration stating that he was taught in safety training at the academy to

24   place his hand on his gun during traffic stops, support a finding that Officer

25   Thompson's placement of his hand on his gun was not done because of any

26   animus toward Plaintiff. Even if he placed his hand on his gun after Plaintiff

27

28   same sort of protected speech had not been." *Id.* at 407. Because Plaintiff has not presented
     any such objective evidence that similarly situated individuals were not ticketed or seized for
     his traffic violations, the Court finds that this exception does not apply.

1    questioned his policing, the evidence supports a finding that Officer Thompson

2    placed his hand on his gun for a legitimate, safety-related reason. This

3    therefore cannot be the basis for Plaintiff's First Amendment retaliation claim.

4         Because Plaintiff has failed to put forth sufficient evidence of causation

5    to survive summary judgment, the Court finds no constitutional violation by

6    Officer Thompson. The Court therefore finds that Officer Thompson is entitled

7    to qualified immunity for all alleged retaliatory action. Plaintiff's First

8    Amendment retaliation claim therefore fails.

9         **B. Plaintiff's Fourteenth Amendment Claim**

10        A claim under 42 U.S.C. § 1983 for violation of the Equal Protection

11   Clause of the Fourteenth Amendment must show "that the defendants acted

12   with an intent or purpose to discriminate against the plaintiff based upon

13   membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686

14   (9th Cir. 2001). To survive summary judgment on his Equal Protection claim,

15   Plaintiff must "'produce evidence sufficient to permit a reasonable trier of fact

16   to find by a preponderance of the evidence that [the] decision . . . was racially

17   motivated.'" *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 754

18   (9th Cir. 2001) (quoting *FDIC v. Henderson*, 940 F.2d 465, 473 (9th Cir. 1991)).

19   The existence of probable cause for a citation is highly probative on the issue of

20   discriminatory intent. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901

21   (9th Cir. 2008).

22        Plaintiff has failed to marshal any evidence of an intent to discriminate

23   by Officer Thompson. Plaintiff's subjective beliefs are not sufficient to create a

24   triable issue of fact for a jury. Given the fact that Plaintiff's U-turn in a school

25   zone violated traffic laws, Officer Thompson had probable cause to issue the

26   citation. Because there is no evidence of any discriminatory motivation or

27   intent behind the citation, Plaintiff has failed to show that Officer Thompson's

28   actions violated his constitutional rights. Officer Thompson is therefore entitled

to qualified immunity for his action, and Plaintiff's Fourteenth Amendment claim fails.

## IV.    CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (ECF No. 33) is GRANTED.

The Clerk of the Court is directed to enter judgment accordingly.

DATED THIS 21st day of June 2024.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

11